UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO.: 1:24-CV-45-LLK

RICKEY P.                                                                                                           PLAINTIFF

v.

MARTIN O'MALLEY,
Commissioner of Social Security                                                                 DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Final Decision of the Commissioner denying his claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.[1] [DN 1]. Plaintiff's Fact and Law Summary is located at DN 12, the Commissioner's responsive Fact and Law Summary is at DN 16. No Reply was filed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit [DN 8]. The matter is now ripe for determination.

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's (ALJ's) Decision is supported by substantial evidence, the Court will AFFIRM the Commissioner's Final Decision and DISMISS Plaintiff's Complaint.

---

[1] Supplemental Security Income (SSI) is governed by Title XVI of the Social Security Act and is a public assistance program available to disabled persons with limited income and resources. See 42 U.S.C. § 1381 and 20 C.F.R. § 416.110. SSI differs from Old Age, Survivors, and Disability Insurance Benefits (OASDI or DIB) available under Title II of the Social Security Act. 42 U.S.C. § 423. Eligibility for DIB funds is based upon contributions that individuals make via Federal Insurance Contributions Act (FICA) taxes for earnings during their working years. For purposes of DIB, a claimant must have sufficient working quarters and still be within their "insured" period to qualify for DIB. The Social Security Administration manages both programs and uses the same five-step sequential evaluation process for determining disability under both programs. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

**Administrative History**. Plaintiff filed his Title XVI SSI application on April 5, 2021, alleging disability from September 24, 2019, as a result of degenerative disc disease with spinal canal narrowing, nerve damage in his left arm, neck damage with limited movement, supraventricular tachycardia (SVT), chronic obstructive pulmonary disease (COPD), hypertension, high cholesterol, and depression. [DN 7 at 338]. He was 49 years old at the time of filing. His claims were denied initially on December 21, 2021, and upon reconsideration on April 7, 2022. Plaintiff requested a hearing before an ALJ, which was granted. Due to COVID-19, ALJ Susan Brock conducted the hearing via telephone; Plaintiff was represented at the hearing by attorney Mary Genice Burchett Bower. Tricia Muth, an impartial vocational expert, also provided testimony at the hearing. The ALJ evaluated the evidence of record using the requisite five-step sequential evaluation process. On April 11, 2023, the ALJ issued her written Decision [DN 7 at 58-75] and found that Plaintiff was not disabled.

Plaintiff timely requested review of the ALJ's Decision by the Appeals Council, and on May 22, 2023, and June 21, 2023, the Appeals Council granted him extensions of time in which to file additional evidence. [DN 7 at 15-24]. On January 4, 2024, the Appeals Council denied Plaintiff's request for review. [DN 7 at 6-12.] In addressing the additional evidence submitted by Plaintiff, the Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." [DN 7 at 7]. As a result of the Appeals Council denial, the ALJ's Decision became the final Decision of the Commissioner and subject to judicial review in this Court. 42 U.S.C. §§ 405(g) and (h); 20 C.F.R. § 422.210(a).

**The ALJ's Decision**. The ALJ's Decision [DN 7 at 58-75] denying Plaintiff's claim for SSI benefits was based on the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 5, 2021, the application date (20 C.F.R. 416.971 *et seq*.). [DN 7 at 60].

Second, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease with status post-cervical fusion; right shoulder impingement; obesity; cardiac arrythmia; and depressive disorder (20 CFR 416.920(c)). [DN 7 at 60].

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). [DN 7 at 61].

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). In making an FRC determination, the ALJ considers the record in its entirety. 20 C.F.R. § 416.945(a)(3). The ALJ found that, notwithstanding his impairments, Plaintiff can perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the individual can stand and/or walk for four hours in an eight-hour workday. He can occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. He can frequently handle and finger bilaterally. He can tolerate frequent exposure to fumes, odors, dusts, cases, and pulmonary irritants. He can tolerate occasional exposure to extreme cold, vibration, unprotected heights, and hazardous machinery. The individual can understand, remember, and carry out simple instructions. He can adapt to routine changes in the workplace.

[DN 7 at 64].

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work (20 CFR 416.965). [DN 7 at 74].

Fifth, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a) [DN 7 at 74], including cashier II, hand packager, and shipping/receiving weigher. [DN 7 at 75]. Therefore, ALJ Brock concluded that Plaintiff has not been under a "disability" as defined in the Social Security Act, from April 5, 2021, through the date of the Decision. [DN 7 at 75].

**Standard of Review**. The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*.

Because Plaintiff filed his SSI claim in April of 2021 [DN 7 at 250], the new rules for weighing medical opinions apply. See 20 C.F.R. § 416.920c ("For claims filed …on or after March 27, 2017, the rules in this section apply."). Under the new rules, special evidentiary weight is no

longer given to the opinion of a treating medical source. 20 C.F.R. § 416.920c(a). In determining the persuasiveness of a medical opinion, an ALJ just consider "supportability, consistency, relationship [with the claimant], specialization, and other factors." 20 C.F.R. § 416.920c(c)(1)-(c)(5). However, the ALJ need only explain how he/she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(c)(2). Without the treating physician rule, the applicable regulations allow the ALJ "to evaluate the persuasiveness of submitted medical opinions, with particular focus on their supportability and consistency." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645 at *6 (6th Cir. June 12, 2024).

**Relief sought by Plaintiff**. Plaintiff's Fact and Law Summary outlines his argument that the ALJ's RFC findings are unsupported by substantial evidence. He disagrees with the ALJ's RFC findings for both his physical and mental limitations and seeks a Sentence 4 remand for "proper evaluation of residual functional capacity." [DN 12 at 5]. Specifically, Plaintiff's condition and pain apparently improved with implantation of a spinal cord stimulator, but the leads for the stimulator were dislodged following a fall after which it ceased to work correctly. Plaintiff contends that due to the need for lead revision on the stimulator (a procedure his insurance initially declined to cover), the ALJ should have considered his limitations "as he is, not with revision." [DN 12 at 5]. In other words, Plaintiff alleges it was error for the ALJ to consider his reported activities to support her RFC finding, because she failed to address his decline in functioning since the issues began with the stimulator. [DN 12 at 5]. He further contends that the ALJ "played doctor" when she made findings regarding his right shoulder limitations. Finally, Plaintiff contends that the ALJ's mental RFC findings were unsupported by substantial evidence, and that remand is required for the ALJ to consider his moderate limitation in social interaction.

A district court's authority to remand a case … is found in 42 U.S.C. § 405(g) …" *Hollon ex. rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 482-83 (6th Cir. 2006). The Social Security Act authorizes two types of remand: 1) a post judgment remand in conjunction with a decision affirming, modifying or reversing a decision of the [Commissioner] (a Sentence 4 remand); and 2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously present to the [Commissioner] (a Sentence 6 remand). See *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).[2] Sentence Four authorizes remand for further administrative proceedings (and sometimes a judicial award of

---

[2] 42 U.S.C. § 405(g) sets forth the scope of judicial review of final Social Security Administration decisions by the United States District Courts. The mechanisms for a District Court to remand a claimant's case to the agency are set forth in Sentences 4 and 6 (highlighted below):
Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the recording including the evidence upon which the findings and decision complained of are based. **The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing**. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a part to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. **The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.** Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officed of Commissioner of Social Security or any vacancy in such office.

benefits) if Plaintiff shows that the ALJ's Decision is not supported by substantial evidence in the administrative record that was before the ALJ.

**A Sentence Four remand is not warranted, as the physical limitations set forth in the ALJ's RFC Findings are supported by substantial evidence.** The ALJ's RFC analysis, prepared "[a]fter careful consideration of the entire record," constitutes ten pages of her written Decision. [DN 7 at 64-73]. Consistent with the regulatory requirements, the ALJ addressed both the objective medical evidence and Plaintiff's subjective allegations regarding his alleged impairments and associated limitations. *See* 20 C.F.R. § 416.945(a)(3) (requiring same). In the end, the ALJ determined that Plaintiff could perform a range of light work as defined in 20 C.F.R. § 416.967(b). [DN 7 at 59]. In making her RFC findings, the ALJ properly considered Plaintiff's symptoms and the extent to which they are consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSR 16-3p, noting as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As for the claimant's statements about the intensity, persistence and limiting effects of his or her symptoms, they are inconsistent with the evidence of record.

[DN 7 at 65].

Plaintiff contends that due to the need for lead revision on his spinal cord stimulator[3] (a procedure his insurance initially declined to cover), the ALJ should have considered his increased pain and decreased functioning "as he is, not with revision." [DN 12 at 5]. Plaintiff contends that the ALJ should not have considered his reported activities to support her RFC finding, because she

---

[3] Plaintiff's back pain apparently improved in April of 2021 following the implantation of a spinal cord stimulator at the suggestion of Dr. Steven Reiss, but the leads for the stimulator were dislodged following a fall after which it ceased to work correctly.

failed to address his decline in functioning since the issues began with the stimulator. [DN 12 at 5]. Plaintiff seems to argue that the ALJ did not consider his allegations of increased pain and decreased functioning that arose from problems with the spinal cord stimulator, but the undersigned's review of her Decision reflects otherwise. Specifically, the ALJ recounts the medical history with the stimulator from its suggestion by Dr. Reiss, through its implantation in April 2021 and resulting symptom improvement, to its malfunction following a fall in 2022, noting the changes in symptoms as related by Plaintiff throughout. [DN 7 at 64, 66, 68, 69]. The ALJ's examination of Plaintiff during the Hearing [DN 7 at 112-115] as well as the language contained in the Decision itself reflect that she took into consideration the need for lead revision surgery and the correlating changes in Plaintiff's subjective complaints:

> In December 2020, a CT myelogram of the lumbar spine showed mild neural foraminal compromise bilaterally at L5-S1, but this still did not appear to explain the severity of claimant's complaints. Steven Reiss, M.D., found no evidence supporting surgical intervention, but he suggested a spinal cord stimulator, noting that the claimant may have nerve inflammation (Exhibits 6F and 7F). The claimant appeared to report significantly improved symptoms after receiving the spinal cord stimulator, and the claimant's apparent lack of need to take medication supports these reports (Exhibits 6F, 7F, 8F and 16F). The claimant appeared to largely stop complaining of problems with his back and right lower extremity until a fall in February 2022 caused the need for lead revision, but the claimant apparently did not receive insurance approval (Exhibit 29F). Considering the largely normal objective imaging of the lumbar spine, normal nerve condition study, largely unremarkable physical examinations, and reports of significant improvement of back pain prior to disruption of the spinal cord stimulator; it appears that lead revision would, again, largely mitigate the claimant's symptoms. The claimant reported that he drove a vehicle, performed some household chores, cared for animals, took the garbage out, got the mail, and went hunting five or six times each deer season, climbing a ladder to access a deer stand. These findings support the claimant's limitation to light work with standing and/or walking for four hours in an eight-hour workday; occasional postural activities; occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; and occasional exposure to extreme cold, vibration, unprotected heights, and hazardous machinery.

[DN 7 at 68]. This discussion of the evidence supplies the necessary, accurate and logical bridge between the evidence of record and the ALJ's residual functional capacity findings.

Ultimately, Plaintiff bears the burden of proving a more restrictive RFC than that found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019). Typically, a Plaintiff may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of pain and other subjective symptoms. Plaintiff has identified no treating or other medical source who opined greater restriction than those found by the ALJ. Moreover, where the ALJ's evaluation of the medical opinions is supported by substantial evidence, the ALJ's pain/credibility assessment is "virtually unchallengeable absent compelling reasons." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 4442 (6th Cir. 2017). In this case, the ALJ's evaluation of the medical evidence is supported by substantial evidence, and the undersigned finds no compelling reason to second guess the ALJ's pain/credibility assessment.

Plaintiff finds fault with the ALJ's RFC findings regarding his right shoulder limitations. Specifically, Plaintiff argues that the ALJ "played doctor" by inappropriately interpreting raw medical data in functional terms in making her RFC findings. The Court's review of the ALJ's findings pertaining to his shoulder limitations reveals not an ALJ playing doctor, but instead an ALJ whose opinion thoroughly reviews and cites to medical findings already interpreted by medical professionals. Furthermore, it is the ALJ who is responsible for assessing a claimant's RFC, not a medical source. 20 C.F.R. § 416.946(c). In fact, it is the province of an ALJ to formulate the restrictions in a claimant's RFC based upon all of the relevant and other evidence of record; an ALJ's RFC finding need not correspond to any particular physician's opinion. *See* 20 C.F.R. § 416.945(a)(3) and *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

**Evaluating mental impairments.** In cases where a claimant has mental impairments, the ALJ must determine the degree to which they significantly limit a claimant's ability to do one or more basic work activities. This analysis is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria. 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. They are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id*. The four areas of mental functioning are evaluated on the following five-point rating scale: none, mild, moderate, marked and extreme. 20 C.F.R. § 416.920a(c)(4). To satisfy the paragraph B criteria, a claimant's mental disorder must result in an extreme limitation in one or marked limitation in two or the four areas of mental functioning. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E.

**A Sentence Four remand is not warranted, as the ALJ's mental RFC findings are supported by substantial evidence**. The ALJ found that Plaintiff's mental impairment does not meet listing-level severity under the paragraph B criteria. She found Plaintiff to have mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentrating, persisting or maintaining pace; and mild limitation in adapting or managing oneself. In support of these findings, the ALJ referenced and relied upon the treatment records, consultative exam, self-reported activities of daily living, and other evidence of record. Specifically, it was noteworthy to the ALJ that Plaintiff had had only one mental health treatment visit in the record with a finding of only "mild" depression. [DN 7 at 672-675]. In addition, the mental status notes scattered throughout Plaintiff's physical treatment visit records were unremarkable.

For additional support of her mental RFC findings, the ALJ relied upon the opinions of consultative examiner Ollie C. Dennis, Ed.D. who evaluated Plaintiff and found--with regard to

paragraph B criteria--that Plaintiff was mildly limited in understanding and remembering one and two-step instructions; mildly limited in ability to sustain attention to complete tasks; mildly-to-moderately limited in social interactions; and mildly-to-moderately limited in adapting to the pressures of normal daily work activity. [DN 7 at 909-916]. Of additional import to the ALJ's mental RFC findings were Plaintiff's self-reported activities of daily living which included helping to manage household finances, making purchases, caring for his personal hygiene, washing laundry and dishes, and caring for animals. He indicated that he had a drivers' license and drove a vehicle a couple of times per week, and also went hunting multiple times a year using a tree stand.

Plaintiff faults the ALJ's mental RFC determination, arguing that her finding of only mild limitation in interacting with others was unsubstantiated and that the record supported greater limitations. Specifically, she notes that consultative examiner Dr. Dennis found "mild-to-moderate" limitations in social interaction, and that the ALJ should have assigned the more severe "moderate" limitation within that range. The ALJ's Decision finding only "mild" limitation in interacting with others is based upon Plaintiff's one mental health treatment record, where complained of only "mild" depression. It was additionally supported by the report of Dr. Dennis wherein he found Plaintiff to be "appropriately dressed, easily established rapport, spoke spontaneously, and demonstrated appropriate orientation during his consultative examination." These observations by Dr. Dennis are consistent with those made by Plaintiff's treating sources in the medical records. The ALJ found that the record contained "no objective evidence that the claimant has more than mild limitation in interacting with others." [DN 7 at 62].

Plaintiff further challenges the ALJ's mental RFC finding of only "mild" limitation in interacting with others by suggesting that it is a misstatement of the record and fails to account for the "agitation" remarks noted within his pain management records. He urges that the several times

"agitation" is mentioned in treatment is objective evidence of more than the "mild" limitations in interacting with others found by the ALJ. However, as the Commissioner aptly notes in its brief, the notation of an agitated mood is not evidence that Plaintiff had any resulting difficulty interacting with the medical staff or others. For the five pain management records that were before the ALJ in which the "agitation" notation was made, there are over forty other treatment records in which there are no deficits noted in his ability to relate to others. As the Commissioner further points out (and consistent with the undersigned's review of the record), there are many notations that Plaintiff is pleasant or talkative, with normal mood and affect. Finally, the fact that Plaintiff's mental symptoms have required no treatment weighs against a finding of more than the "mild" limitations in interacting with others as found by the ALJ.

Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x 586, 589 (6th Cir. 2019). In her Decision, The ALJ considered each of the four subparts of the paragraph B criteria, cited to medical and other evidence supporting her mental RFC findings, and complied with the applicable regulations. While it is true that the ALJ did not specifically mention "agitation" in her Decision, she was not required to do so. In cases such as this one, where the medical record is extensive, it stands to reason that not every piece of evidence can be addressed in the ALJ's Decision. The administrative record reviewed by the undersigned consists of over 1400 pages. Laudably, the ALJ committed some 14 pages of her 18-page opinion to reviewing the treatment records in Plaintiff's file. An ALJ "can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). The undersigned finds that the ALJ's mental RFC findings are supported by the medical evidence of record as set forth in her Decision.

Having reviewed the medical records, medical opinions evidence, and other evidence in the administrative record, particularly the facts and sources relied upon by the ALJ in formulating the RFC, the undersigned finds that the ALJ's Decision stands solidly on substantial evidence. "No principle of administrative law or common sense requires [the Court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result," *Id*. Most disability claims have medical and other evidence that could support findings either way; it is the ALJ's job to weigh that evidence and articulate the reasons for either accepting or rejecting it: "[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). "[A]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Because the Plaintiff has identified no basis to conclude that ALJ Brock's Decision is unsupported by substantial evidence, he is not entitled to a Sentence 4 remand.

## ORDER

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's Decision is supported by substantial evidence, the Commissioner's final decision is hereby AFFIRMED, and Plaintiff's Complaint is DISMISSED.

December 2, 2024

Lanny King, Magistrate Judge
United States District Court